IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOWARD WATSON, and KEEP HOUSTON SAFE, S.P.A.C., <br> Plaintiffs <br><br> VS. <br><br> CITY OF HOUSTON, TEXAS <br> Defendant | § § § § § § § § § § | CIVIL ACTION NO. 4:10-cv-03211 |

**FIRST AMENDED COMPLAINT FOR A DECLARATORY JUDGMENT
AND APPLICATION FOR INJUNCTIVE RELIEF UNDER THE VOTING RIGHTS ACT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW the Plaintiffs, Howard Watson and Keep Houston Safe S.P.A.C., and files this First Amended Complaint for Declaratory Judgment and Application for Injunctive Relief Under the Voting Rights Act. In support thereof, Plaintiffs allege the following:

**I.
PARTIES**

1. HOWARD WATSON, Plaintiff herein, is an African-American registered voter currently residing within the territorial limits of the City of Houston.

2. KEEP HOUSTON SAFE S.P.A.C., Plaintiff herein, (hereinafter "Keep Houston Safe") is a specific-purpose political action committee dedicated to educating the public regarding the City of Houston's automated traffic signal enforcement program (hereinafter "Intersection Safety Camera Program" or "Program").

3. CITY OF HOUSTON, Defendant herein, (hereinafter "City") is a home-rule municipality incorporated under the laws of the State of Texas, located in Harris County, Texas.

Service may be had on the City of Houston by serving Mayor Annise Parker or City Secretary Anna Russell at 901 Bagby St., Houston, Texas, 77002.

## II.
## JURISDICTION & VENUE

4.      Jurisdiction over this matter arises pursuant to the Voting Rights Act of 1965, 42 U.S.C. §1973c ("Section 5"). This Court retains pendent jurisdiction over the state claims asserted herein due to the common nucleus of operative facts that necessarily must be addressed prior to the Court's Section 5 analysis.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), because a substantial part of the events giving rise to these claims have occurred in this district.

## III.
## FACTUAL BACKGROUND

6.      Defendant City of Houston is incorporated under the laws of the State of Texas, and operates as a home-rule municipality pursuant to the provisions of the City of Houston City Charter.

7.      Defendant City of Houston is a political subdivision of the State of Texas, a jurisdiction covered under §4 of the Voting Rights Act, 42 U.S.C. §1973b, and thus may not enact or seek to administer any change in voting practice or procedure unless and until it receives preclearance under §5 of the Voting Rights Act, 42 U.S.C. §1973c. Congress has abrogated the Eleventh Amendment immunity of the State of Texas, and its political subdivisions, with respect to Plaintiffs' claims in this action.

8.      The Houston City Charter, Article VII-b, Section 3, as approved by qualified voters of the City, sets forth the powers of registered voters of the City of Houston to approve or reject at the polls any ordinance passed by the City Council, such power being known as the power of "Referendum." That Section provides that, if prior to the date when an ordinance or resolution shall take effect, or within thirty (30) days after the publication of same by the City Council of any

ordinance which is subject to a Referendum, a petition signed by an appropriate number of qualified voters may be filed with the City Secretary requesting that any such ordinance be repealed or submitted to a vote of the electors.

9. On December 21, 2004, the City of Houston adopted and enacted City Ordinance No. 04-1312, an ordinance which amended the City's traffic code to authorize the implementation of an Intersection Safety Camera Program. The most current version of the Program was passed via Ordinance No. 2007-985 on August 29, 2007. No Referendum petitions were submitted to the City after the 2004 adoption of an ordinance implementing the Program. The Program was amended most recently in 2007, and once again no Referendums were submitted to the City. Rather, the City successfully defeated a state action raising a challenge to the Program in 2007-2008 brought by the authors of the Petition complained of herein.

10. On or about August 9, 2010, an individual who resides outside of the City submitted a purported Charter Amendment Petition (hereinafter "Camouflaged Referendum") seeking to amend the Houston City Charter to repeal the City's Intersection Safety Camera Program. The petition sought to prohibit Defendant from using "...*photographic signal enforcement systems to civilly, criminally, or administratively enforce any state law or City Ordinance against the owner or operator of a vehicle operated in violation of a traffic control signal, specified by Section 544.007(d) of the Texas Transportation Code.*" Despite substantial concerns that the Camouflaged Referendum constituted an untimely Referendum pursuant to the City Charter's express limitation on submission of Referendum petitions, Defendant chose to move forward with placing the proposed legislation before the voters at the next uniform election date.

11. On or about August 24, 2010, the undersigned counsel informed Defendant that the Camouflaged Referendum was filed beyond the 30-day time period specified in the City Charter, and should therefore be refused under State Law. Moreover, the undersigned counsel also

explained that acceptance of a Referendum Petition beyond the 30-day time period constituted a change in voting which required preclearance before it could be implemented. Nevertheless, the City Council voted to place the proposed matter before the voters for the November 2010 election as Proposition Number 3.

12. The submission and approval of the Camouflaged Referendum seeking to repeal the City's existing Program, as adopted and implemented via ordinance, circumvented the express limitations on the power of Referendum incorporated into the Houston City Charter as adopted in the City's 1913 charter election. In the event the Petition's authors seek to repeal the Program, the appropriate course of action would be to amend the City Charter to remove or otherwise change the 30-day limitation on the citizen's power of Referendum. Until such a change is submitted and approved by the voters, the citizenry's ability to bypass their elected officials and legislatively eliminate the Program remains limited to the framework approved at previous charter elections.

13. It is anticipated that Defendant may argue that they have a ministerial duty to submit this Camouflaged Referendum to the voters under Chapter 9 of the Texas Local Government Code. However, under federal law:

> Acts by a political subdivision of a state which are simply ministerial in nature and taken in response to state law may be subject to separate preclearance when the interests enumerated in §5 of the Voting Rights Act are invoked. *See Lopez v. Monterey County*, 525 U.S. 266, 278 (1999) (agreeing that a covered jurisdiction "seeks to administer" a voting change even where the jurisdiction exercises no discretion in giving effect to a state-mandated change, requiring §5 preclearance before implementation)... The salient issue is that where a subdivision of a state takes "ministerial" action in accordance with state law whereby a change in voting practice occurs, that subdivision is seeking to administer such a change. That in and of itself requires preclearance where there is potential for discrimination.

*Curtis v. Smith,* 121 F. Supp. 2d 1054, 1062 (E.D. Tex. 2000).

14. Chapter 9 of the Texas Local Government Code, governing the procedures for amending a city's charter, has been amended by the Texas Legislature multiple times since the

adoption of the 1965 Voting Rights Act. Multiple preclearance submissions were submitted by the State addressing legislative amendments, including changes to the number of signatures required to place a matter on the ballot; changes in the uniform date for charter amendment elections; and validating statutes for previous charter amendments. Most notably, what has <u>not</u> been precleared is the use of a charter amendment petition to circumvent or otherwise bypass express limitations or prohibitions adopted by voters and incorporated into a home-rule municipality's city charter.

15. By accepting the Petition as a charter amendment petition, rather than the appropriate designation of a Referendum petition, Defendant has instituted a change in election-related policies and procedures that must be precleared in accordance with §5 of the Voting Rights Act.

16. On August 27, 2010, approximately three days after ordering the election complained of herein, Defendant transmitted its "*Submission under Section 5 of the Voting Rights Act of 1965, as amended, for the City of Houston, Harris County, Texas ("the City"), Submission No. 93 – City of Houston November 2, 2010 Special Election – Expedited Review Requested*" (hereinafter "Preclearance Request"). Notably, the 110-page submission completely fails to address the change in voting practices adopted by the City in ordering an election on an untimely Referendum Petition submitted nearly six years after the deadline contained in the City Charter.

17. For the City to conduct this election, the Voting Rights Act mandates that the City first submit its proposed change in voting practices or procedures to the Department of Justice or the United States District Court for the District of Columbia for preclearance. Defendant's Preclearance Request of August 27, 2010 fails to address such issues; thereby precluding the City from moving forward with the election until such preclearance has been received.

18. Because the Camouflaged Referendum has been improperly placed on the ballot, a potential for racial discrimination exists. More specifically, minority voters may lose their ability to elect candidates of their choice in local, statewide and federal elected offices.

## IV.
## FAILURE TO PRECLEAR

19. Plaintiff Watson incorporates by reference paragraphs 1-18 as if set forth fully herein.

20. The State of Texas and all political subdivisions, including Defendant herein, are jurisdictions covered by the "preclearance" requirements of Section 5 of the Voting Rights Act of 1965, 42 U.S.C. §1973(c). Section 5 provides that a covered jurisdiction may not implement any change in election practices unless it has first submitted the proposed change to the Attorney General, and the Attorney General has not interposed an objection to the change within 60 days, or unless it has obtained a declaratory judgment from the United States District Court for the District of Columbia that the proposed change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color."

21. In ordering an election on Proposition Number 3 to be held that would repeal the City's Intersection Safety Camera Program, Defendant has instituted a change in voting practices or procedures without seeking preclearance as required by the Department of Justice.

22. The *potential* for minority voting strength to be diluted through inclusion of Proposition Number 3 on the ballot is a harm that can only be remedied through immediate relief granted at the federal district court level. As the U.S. Supreme Court has stated:

> First, while it is true that the case before us today does not involve any charge of racial discrimination in voting, the decision whether discrimination has occurred or was intended to occur, as we have explained on many occasions, is for the Attorney General or the District Court for the District of Columbia to make in the first instance. The critical question for us, as for the District Court below, is whether "the challenged alteration has the *potential* for discrimination."

*Morse v. Republican Party of Virginia,* 517 U.S. 186, 216-217 (1996).

23. Plaintiff Watson requests that this Court instruct Defendant to re-submit its Preclearance Request to the appropriate authority, and to refrain from conducting an election on

Proposition No. 3 until such time as the appropriate authority approves the changes described herein pursuant to the Voting Rights Act of 1965.

## V.
## REQUEST FOR DECLARATORY RELIEF

24. Plaintiff Keep Houston Safe S.P.A.C. hereby incorporates paragraphs 1-18 as if fully set forth herein.

25. The power of referendum is the exercise by the people of a power reserved to them; although the voters of a particular city may enact certain limitations that withdraw a particular subject from the field in which the referendum process traditionally operates. *Glass v. Smith, 244 S.W.2d 64, at 652 (1951)*. For example, the Houston City Charter contains an express requirement that Referendum petitions be submitted to the City <u>no later than</u> thirty (30) days after the adoption or enactment of the ordinance sought to be repealed. The Petition complained of herein was accepted by the City nearly six years after the adoption of the Ordinance sought to be repealed.

26. The question of whether a municipality has the statutory authority to order an election can only be determined by way of a declaratory judgment suit. *Commissioners' Court of San Augustine County v. Rayburn, 264 S.W.2d 552, 555 (Tex.Civ.App. – Beaumont, no writ)*. A specific purpose political action committee does not have the standing to raise questions regarding the election process by way of an Election Contest. Thus, Plaintiff Keep Houston Safe S.P.A.C. respectfully requests that this Court determine whether the election ordered by Defendant on August 24, 2010 constitutes a Referendum election that would invalidate or otherwise repeal the Ordinance which authorizes the City to operate its Intersection Safety Camera Program.

27. Should the Court first determine that the operative effect of the Petition would be to repeal the City's Camera Program, Plaintiff Keep Houston Safe S.P.A.C. requests that the Court next interpret the provisions of the City of Houston Charter regarding the power of Referendum, to

determine whether the purported Charter Amendment Petition was in fact an untimely filed Referendum. Plaintiff Watson alleges that the acceptance of an untimely Referendum constitutes a change in voting practices and procedures that requires the City to seek and receive preclearance from the Department of Justice on the new voting practices. Additionally, such determination will enable the Court to render an opinion as to whether the ordering of the election was done without appropriate authority; rendering the results *void ab initio*.

28.     In the event the Court agrees that the operative effect of the electors' rejection of the Intersection Safety Camera Program as addressed in the Petition (Proposition Number 3) would be to repeal the City's ordinance implementing the same, Plaintiff Keep Houston Safe S.P.A.C. asks the Court to determine whether titling the Petition as a "Charter Amendment Petition" pursuant to Chapter 9 of the Local Government Code allows the Petition's authors to bypass the express temporal limitations of the power of Referendum approved by the voters of the City of Houston.

## VI.
## PRAYER FOR RELIEF

**WHEREFORE PREMISES CONSIDERED**, the Plaintiffs respectfully request that this honorable Court issue the following relief:

A.     Plaintiff Watson prays that the Court promptly will convene a three-judge court to conduct an expedited hearing and decide this matter. Pending such expedited hearing, Plaintiff Watson prays a temporary restraining order be put into place prohibiting Defendant and those acting in concert with Defendant or at Defendant's direction from taking any action towards the administration of Proposition Number 3 for the November 2, 2010 election on the Petition complained of herein, unless and until Defendant seeks and obtains preclearance for the change in voting procedures.

B.     Following a hearing before the three-judge Court, Plaintiff Watson prays that the Court enter preliminary and permanent injunctions prohibiting Defendant and those acting in concert with them or at their direction from taking any action towards the administration of Proposition Number 3 for the November 2, 2010 election on the petition complained of herein,

unless and until such changes in voting standards, practices, and procedures have been submitted and precleared under §5 of the Voting Rights Act, 42 U.S.C. §1973c.

C. Plaintiff Keep Houston Safe S.P.A.C. prays that the Court will enter a declaratory judgment that Defendant's Intersection Safety Camera Program, as adopted via ordinance December 21, 2004, may only be repealed through citizen-initiated legislative action pursuant to the powers of Referendum as defined by the Houston City Charter. Plaintiff Keep Houston Safe S.P.A.C. also prays that the Court will enter a declaratory judgment that the Charter's express thirty-day limitation precluded the submission of a Referendum petition in August 2010 as being untimely. Accordingly, Plaintiff Keep Houston Safe S.P.A.C. seeks a declaration that an election on Proposition Number 3, as ordered by Defendant on August 24, 2010, was ordered without appropriate authority, and such election order and results are *void ab initio.*

D. Plaintiff Watson prays that the Court will enter a declaratory judgment that until and unless Defendant has received preclearance under §5 of the Voting Rights Act, the election to be held on the Petition complained of herein constitutes a change in standards, practices, and procedures affecting voting in a manner that may not be implemented without preclearance under §5 of the Voting Rights Act, 42 U.S.C. §1973c.

E. That the Court retain jurisdiction of this matter for all purposes to effect the relief sought herein.

F. Award Plaintiff Watson and Keep Houston Safe S.P.A.C. their costs incurred in prosecuting this action, including an award of attorneys' fees and expenses, pursuant to 42 U.S.C. §§ 19731 and 1988, respectively.

G. That the Court enter such orders and grant such other and further relief as the Plaintiffs may be justly entitled.

    Respectfully Submitted,

    ANDY TAYLOR & ASSOCIATES, P.C.

    BY: /s/ Andy Taylor
    Andy Taylor
    State Bar No. 19727600
    Amanda Peterson
    State Bar No. 24032953
    405 Main Street, Suite 200
    Houston, TX 77002
    713-222-1817 (telephone)
    713-222-1855 (facsimile)